ECONOMY FUSE & MFG. CO. v. BEAVER ENGINEERING CO.

(Circuit Court of Appeals, Third Circuit.   January 21, 1919.)

No. 2397.

1. PATENTS ⬤⇒328—INFRINGEMENT.
   The Hornsby & Anger patent, No. 882,498, for protective appliance for electric circuits and apparatus, which is a device for mechanically indicating on the outside of the casing when a fuse has blown, *held* not infringed.

2. PATENTS ⬤⇒328—INFRINGEMENT—FUSE HOLDER.
   The Horton patent, No. 901,448, for fuse holder, as limited by the prior art, *held* not infringed.

Appeal from the District Court of the United States for the District of New Jersey; Thomas G. Haight, Judge.

Suit in equity by the Economy Fuse & Manufacturing Company against the Beaver Engineering Company. Decree for defendant, and complainant and defendant appeal. Affirmed.

The following is the opinion of Haight, District Judge, in the court below:

This is a suit for infringement of claims 5, 6, 7, 9, 10, 13, and 24 of patent No. 882,498, granted to Hornsby & Anger on March 17, 1908, and claims 6, 12, 13, and 14 of patent No. 901,448, granted to B. D. Horton on October 20, 1908. Both patents relate to electric fuses of the inclosed indicating type. The infringement complained of is the sale by the defendant of certain fuses which were manufactured by the Chase-Shawmut Company. They will hereafter be referred to as defendant's fuses or devices. Inclosed indicating fuses are designed to reveal by a mere exterior inspection whether or not the fuse has been blown. They are of two general types. The type first evolved, and apparently, with some modifications, still very extensively used, may be generally referred to as that of the Thalacker patent (No. 502,541, issued on August 1, 1893). In that type, in addition to the main fuse, there is employed an auxiliary fuse or shunt wire, which, when the main fuse blows, carries all of the current, and, being smaller and of greater resistance, is itself immediately blown. In order that an exterior inspection may show whether the fuse has blown, a portion of the auxiliary fuse is brought to the outside of the case inclosing the main fuse, or can be seen through it. The prior art exhibits several different forms of this general type. It is claimed, however, that it is objectionable, in that, as a portion of the auxiliary fuse is exposed on the outside of or through the fuse case, there is danger of fire being communicated to nearby inflammable objects, so that the beneficial effect of inclosing the main fuse is, in a measure, lost by the new danger resulting from the burning of the exposed auxiliary fuse.

It was to overcome this objection, real or supposed, that the second type of indicating fuses, to which those of the patents in suit belong, was evolved. This type may be referred to as mechanical indicators. The prior art likewise exhibits several different forms of such. That of the Hornsby & Anger patent in suit employs the basic idea of Thalacker, in the use of an auxiliary or shunt wire. This latter wire, however, is not exposed in any way on or through the outside of the fuse case. It is attached to, and holds depressed, a coil spring, which, in turn, is attached to a plug inserted at the end of the case. When the main fuse wire blows, all of the current, as in Thalacker, is immediately diverted to and passes over the auxiliary or shunt wire, with the result that the latter is at once blown, and thereby the coil spring released, which in turn ejects the plug at the end of the case, either wholly or through an aperture in a second or outer inclosing case, and thus gives visible

indication that the fuse has blown. Unless a second inclosing or outer case is used, it seems entirely clear that, without some modifications which are not disclosed in either the specifications or drawings of the patent, this fuse would not overcome the difficulties which the patentees sought to obviate. It would seem, therefore, that the word "sheath," or its equivalent, in each of the claims in suit of this patent, should be construed to mean an inner case and an outer case.

However, I have not found it necessary to base my decision on that construction. It seems to me that, even if the claims are not held to require the two inclosing cases, still the defendant's devices do not infringe them. Reference to the file wrapper shows that this patent was originally applied for on December 19, 1901, but was not granted until March 17, 1908, and then only after many amendments had been made to the claims, and after the patentees had vainly endeavored to procure the allowance of claims in which were used the words "an attenuated or threadlike auxiliary fuse member" or their equivalent, without the qualifying words now found in the patent, "of small electric carrying capacity" or their equivalent. It will be noted that in each of the claims in suit, with the exception of the sixth and the twenty-fourth, the main fuse wire is referred to as carrying the principal portion of the electric current and in all the others fuse member is described as an "auxiliary" one "of small electric carrying capacity." In the twenty-fourth claim the spring element is described as "a spring adapted to project the indicator upon the breaking of the auxiliary conductor." In the ninth claim the auxiliary member is said to be "in the circuit and severed by the current when the fuse blows." This also applies to the tenth and the thirteenth claims. In addition, in the latter the auxiliary member is further described as being so arranged in the circuit that "when said fuse (the main fuse) is blown, the current will traverse said auxiliary member and cause the same to be disrupted, should it not previously have been severed by the blowing of the fuse." When the expressions in the claims, the specifications, and especially the file wrapper are considered, the conclusion seems to be irresistible that the claims in suit cover only a construction wherein the auxiliary wire is in shunt with the main fuse, in the sense that it is primarily designed to be ruptured, by the passing over it of all of the current after the main fuse has been blown, and not directly through the heat generated by the melting or fusing of the main fuse, as defendant claims is the case with its fuses. The former construction or principle of operation admittedly has advantages over the latter, because a fuse constructed on the former plan will indicate, no matter where the main fuse has blown, as will not always be the case as respects fuses constructed on the latter principle.

The argument that the claims may be given a broad enough construction to cover devices operating on the second principle, before mentioned, is based principally on the testimony of the late Prof. Ganz, which, in turn, is founded upon some of the drawings and expressions in the specifications. But this argument entirely loses sight of the fact that claims, which unquestionably would admit of and in fact make such a construction necessary, were expressly and repeatedly rejected by the Patent Office, in which rejection the patentee acquiesced. Under a familiar principle, therefore, a construction could not now be given to the claims, which would give them the full force and effect of the claims which have been rejected. In addition, such a construction as plaintiff seeks seems to be unwarranted, irrespective of the disclosures of the file wrapper, because, if the auxiliary wire were not intended to be a shunt wire in the sense of the Thalacker device, the use of the words "of small electric carrying capacity" would be quite superfluous, as the words "attenuated or threadlike member" would have been ample and sufficient to describe such a device. The fact that the specifications and drawings of this patent describe and show one form in which the auxiliary wire is not in shunt is of no materiality in this case, because that form was originally designed to be covered by broader claims—claims which did not contain the limitations before mentioned—than those in suit, but which, as before stated, were rejected. Feeling constrained to give to the claims in suit the construction before mentioned, it is entirely clear that none of the

defendant's fuses infringe any of the claims in suit of this patent, unless it be that the attenuated or fragile wire which holds the coil spring depressed, to which in turn the indicating disc is attached, is in shunt with the main fuse wire in the sense of the patent.

No witness attempted to say that it is, except a Mr. Moses, who styles himself "a patent attorney and expert," and who, as so frequently is the case with such witnesses, assumes what no one really versed in the art attempts to state, and which probably could never be proved by experiment, that, although in all of defendant's devices the disrupting of the small wire is primarily accomplished by the direct heating and burning of the main fuse, in some the small wire is so related to the main fuse strip that, if the former were not destroyed by the heat generated by the fusing of the latter, it would be in contact with the ends of the main fuse strip where it had blown, and so "momentarily bridge that gap, thereby carrying the current." Of course, testimony of this kind cannot be accepted to establish the burden which the plaintiff is, by law, required to bear, especially when a real electrical expert called by the plaintiff, does not attempt to substantiate it, and when it appears that the principle of operation of the two devices is clearly and materially different. It must be borne in mind that the prior state of the art does not permit the giving of any broad generic construction to the claims in suit of this patent, except it be, the use of the Thalacker principle of a shunt wire, inclosed entirely within the fuse case and operating a mechanical indicator, instead of, as in Thalacker, the shunt wire itself indicating whether or not the fuse has blown. But defendant's devices do not operate on or embody that principle. I therefore find that the defendant has not infringed any of the claims in suit of the Hornsby & Anger patent.

The broad principle of operation of the device of the Horton patent is substantially the same as that of the alleged infringing devices. They are both mechanical indicators, in which the indication is produced by the fusing of a small fragile wire attached to a spring which controls the indicator; the small wire being fused by the heat generated by the melting of the main fuse wire, as distinguished from being fused by the current passing over the small wire after the main fuse wire has blown, or, as in some of the Horton drawings, by the releasing, as distinguished from melting, of the indicating wire, and hence the spring and indicator, upon the blowing of the main fuse wire. They differ only in details of construction. The Horton patent came so late in the art, however, that it is not entitled to any broad construction on its principle of operation. The Cartwright patent (No. 590,750, issued on September 28, 1897) may be considered, for all present purposes, as the pioneer embodiment of this principle. The Horton patent, like the Hornsby & Anger patent, had a decidedly stormy career through the Patent Office. It was applied for on August 29, 1904, but was not granted until October 20, 1908. Although the brief of counsel for the plaintiff states that only claims 12, 13, and 14 are in issue, the memorandum which I made at the time of the oral argument indicates, as does also the brief of counsel for the defendant, that claim 6 is also in issue. Accordingly I have considered that claim.

Claims 6, 13, and 14 each contains as an element, "a spring-actuated indicator." Claim 12 refers to this element as "a movable indicator." In claims 6, 12, and 13 such indicator is described as "secured to the holder on one side thereof," or "to the exterior of the casing," and in claim 14, as upon the "outside of the casing." In claims 12 and 13 the character of the fuse wire is limited by the expression "having a weakened portion." It is urged by the defendant that the expression "a spring-actuated indicator secured to the exterior of the casing," and its equivalent expressions, must be construed as meaning a flat spring, such as is shown and described in the drawings and specifications, one end of which is permanently fastened to the outside of the case and the other end attached to the small wire which is intended to fuse or be released upon the blowing of the main fuse wire, and thus permit the spring to act and give visible indication of the blowing of the fuse. I think that such is the proper construction to be given to claims 6, 12 and 13. If they are given any other construction, they would seem to be invalid, in view of the Cartwright patent. The indicator in Cartwright is secured to the outside of the holder as fully as in Horton, unless in the latter it is held to

be secured in the sense or manner defendant contends. The only other difference between the construction shown in Cartwright and that called for in claims 12 and 13 is that in the latter the fuse is defined as having a "weakened portion." The purpose, however, to be accomplished by a weakened portion, is identically the same as was sought to be accomplished in the Cartwright patent by the use of an air chamber, namely, the making more certain the blowing of the fuse, and defining the place at which it will blow. This purpose, however, had long before the Horton patent been accomplished by notching, as Horton did, a portion of the fuse, by bending of the wire, as he also did, and by other means. It surely, therefor, did not involve invention to employ in the Cartwright invention, instead of the air chamber which he used for weakening purposes, the notched fuse wire which had been used by Thalacker and others many years before, and which was then well known and in common use. If the words, "secured," etc., in claims 12 and 13, have the meaning which I have before ascribed to them, it is clear that the same meaning must be given to them as respects claim 6.

The defendant's fuses do not have an indicator secured to the holder or case, in that sense, and consequently they do not, for that reason, infringe either claims 6, 12, or 13. The form shown in Figure 4 of Horton's patent, so far as the spring is concerned, is apparently covered by claim 14, as it is by some of the other claims which are not sued upon. In addition, claim 6 contains, as an element, "a connection between the indicator and the fuse, and a connection between the fuse and the opposite portion of the holder." Claim 12 calls for "a connection between the indicator and the weakened portion of the fuse," claim 13 for "a transverse connection between the spring actuated indicator and the weakened portion of the fuse," and claim 14 for a "wire that projects through the side of the casing and has its respective ends attached to the indicator and to the intermediate portion of the fuse." It will thus be seen that each of those claims requires a connection between the fuse and the indicator. The drawings, except Figure 7, which is covered by other claims, and the specifications, show this connection as a real or actual one; that is to say, the small or indicating wire is either directly attached to the fuse wire, or attached thereto through an insulating plate. In either case the purpose is the same, namely, that, when the fuse wire blows, the indicating wire attached thereto will be released, and thus the indicator operate, and that there will be a cross-bracing of the fuse wire.

The defendant's devices clearly have no "transverse" connection, but, if any, a diagonal one. Nor is it by any means clear that any of them have a connection in the sense of an actual one, such as that described in the Horton patent, and shown in all his drawings, except Figure 7. In the defendant's devices the indicating wire does not cause the indicator to operate because the wire is released from its connection or attachment to the main fuse wire, but because it melts when the fuse wire melts, due to its proximity thereto. But as I have heretofore found that claims 12, 13, and 6 are not infringed by the defendant's devices, for the reasons before stated, it is unnecessary for me to determine whether or not defendant's devices have a connection between the indicator and the fuse, in the sense of the patent. As before stated, claim 14 requires that the indicating wire shall have its respective ends "attached" to the indicator and to an intermediate portion of the fuse. It will be noticed that this claim does not call for a weakened portion. It was inserted at the instance of the Patent Office to meet a probable interference. The use of the word "attached" imports a physical connection and fastening. That such a meaning is the proper one is strengthened when the description and drawings are considered in connection with the prior art. The form shown in Figure 7 is clearly not covered by this claim, as in that form there is no attachment of the indicating wire to the main fuse; the former passes through an aperture in the latter. Claim 16 covers that form of device. It seems clear that the attachment intended was an actual one, so as to permit the indicator wire to expand upon the fusing of the fuse wire, or, through the insulating plate and the pulling force exerted by the spring, to be drawn through the melted fuse wire. In addition, the word "attached" is also used in claim 14, in connection with the fuse strip and the casing terminals, and there clearly means an actual physical attachment. It would seem improper

to give it one meaning in one part of a claim, and another in another part. When construed in the before-mentioned sense, I think it clear that the defendant's fuses do not have the indicating wire "attached" to the fuse wire. In some of them the indicating wire is in contact with the fuse wire, so as to burn or melt them when the fuse wire melts, but in none of them is it physically attached to the fuse wire.

As before stated, the Horton patent is not entitled to any broad construction, but must be confined very largely to the forms which the patentee has shown and described. It should be noted, in passing, that the defendant's fuses are manufactured under a patent issued to F. N. Conant on December 9, 1913 (1,081,213). I cannot find, therefore, any infringement of the claims in issue of the Horton patent. I have not overlooked the testimony of the late Prof. Ganz regarding experiments which he made. Accepting them as entirely reliable, although their reliability is questioned by defendant's counsel, I cannot find that they are of any materiality in this case. Whether or not the devices of the Hornsby & Anger patent would, under certain conditions, spit fire, or whether the Cartwright device would always correctly indicate, under all conditions, becomes quite immaterial on that question, in the light of the language used in the claims, and the reasons why such language was so used.

It follows, therefore, that the bill must be dismissed, with costs.

Hervey S. Knight and George L. Wilkinson, both of Chicago, Ill., and Clifford E. Dunn, of New York City, for appellant.

Guy Cunningham and Fish, Richardson & Neave, all of Boston, Mass., for appellee.

Before BUFFINGTON and WOOLLEY, Circuit Judges.

PER CURIAM. This bill charged infringement of two patents. The court below, in its opinion, held neither of them infringed. The plaintiff appealed to this court. The thorough discussion of the art and patents in the opinion of the court below leaves little to be said. We agree with its conclusions, summarizing our general reasons therefor as follows:

The mechanism involved is not a safety device, but merely a time saver, which visually and automatically tells an inspector that a fuse concealed by a sheath protector has been broken, and thus obviates an examination of the interior of the sheath to see if a fuse is blown.

[1] The device made under the Hornsby & Anger patent was one where the main fuse had a shunt wire of smaller size and less electric carrying capacity. We are satisfied that the claims here in suit were addressed to and intended to cover such a device, and that that was indicated by the language (claim 5) "an auxiliary fuse member of small electric carrying capacity," and (claim 6) "a member of small electric carrying capacity for normally holding said signal against operation." We are therefore of opinion that these claims do not cover the defendant's device, which, while it employed a small attenuated wire for holding its spring, such wire had no electrical connections, and did not, therefore, electrically perform the functional part which the shunt wire of the patent claims did.

[2] As to the second patent—Horton—we are of opinion the court below very properly restricted its claims to the particular device disclosed by the patentee. The art was a well-developed one, and the sphere of invention, if any existed, was restricted. The validity of

the claims was not passed upon by the court below, nor shall we consider that question, for that court rightly decided that the defendant did not infringe. The patent showed a V-shaped cut in the fuse; the patentee placed a transverse connection, the details of which we need not describe, which was fastened at one end to the interior of the sheath and at the other to the restrained indicator. The effect of this connection was to hold the fuse in situ, and when the fuse was ruptured the perforated mica sheath at the end of either connection, which had been held in place by the fuse, was released. This actuated the spring and consequently the indicator. This arrangement was one which the patentee makes a matter of substance, saying in the specification:

"The function of the plate $E'$ and a wire $e^2$ is to hold the fuse in a central position in the casing $A$ against the tension of the spring $F$. Without this plate and wire the tension of the spring $F$ might be sufficient to bend the fuse and allow said spring to move away from the casing when the fuse was not burned out."

It will thus be seen that the location of the transverse wire at right angles to the fuse was a functional element in the device of the patentee. The use of the V-shaped cut in the fuse was old in the art, and we assume that the location of the transverse wire in engagement with the fuse, for the purpose of staying the fuse, was new; but neither of these elements is either physically or functionally present in the defendant's device. It has a connecting wire, anchored at one side of the sheath and at the other on the spring; but such wire is neither transverse nor is it in any way connected with the fuse, so as to in any way restrain the movement of the fuse. When burned out by the blowing of the fuse, it permits the spring to move the indicator, and up to that time it holds the indicator in normal position; but up to that time it has no attachment to the fuse, and does not serve to keep it in position.

The court below, therefore, was clearly right in holding there was no infringement.